IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RUBEN BRISENO AGUILAR #11-09405, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Case No.  A-11-CV-491-LY |
| L. JOHNSON #757, J. BARTLETT #1197, L. TOWNE #1732, W. TATE #3357, W. ERVIN #186, C. FULLER #762, C. WALSH #4133, R. SANCHEZ #4489, R. VILLAREAL #4350, M. KELLEY #3188, and M. WALTERS #3623, | § § § § § § § § | |
| Defendants. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges, as amended, effective December 1, 2002.

Before the Court are Plaintiff's Amended Complaint brought pursuant to 42 U.S.C. § 1983 (Document 43), Defendants' Motion for Summary Judgment (Document 65), Plaintiff's Response in Opposition (Document 68), Defendants' Reply (Document 69), and Plaintiff's Surreply (Document 70).  Also before the Court is a request by Plaintiff to stay the case pending his release

from county jail. Mot. for Stay (July 25, 2012) (Document 73). Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis. Order (June 15, 2011) (Document 4).

For the reasons set forth below, the undersigned concludes that the motion to hold the case in abeyance should be denied and the motion for summary judgment should be granted.

## BACKGROUND

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 against eleven employees at the Travis County Correctional Center ("TCCC") alleging harassment, failure to protect from harm, retaliation, and unsanitary conditions. At the time he filed his original complaint, Plaintiff was incarcerated at TCCC. Orig. Compl. at 1 (Document 1).

On February 25, 2011, Plaintiff was booked into the jail for the offense of theft. Mot. for Summ. J. Ex. A-2 at 2450004. On March 21, 2011, Plaintiff was also ordered to be held for the offense of Aggravated Assault 1st Degree Felony. *Id.* at 2450020. While in the custody of the Travis County Sheriff's Office ("TCSO"), Plaintiff filed many grievances, which were all found to be meritless. Mot. for Summ. J. Exs. A, A-7.

Plaintiff has had repeated incarcerations at TCCC. Mot. for Summ. J. Exs. A, A-5. During past incarcerations at TCCC, Plaintiff sometimes requested to be placed in protective custody and at other times indicated that he did not need it. Mot. for Summ. J. Ex. A, A-7 at 2450434. During the relevant time at TCCC, Plaintiff was at times also placed in psychiatric and administrative separation housing. *Id.* On March 23, 2011, Plaintiff was placed in an administrative separation cell for refusing to be housed with other inmates. Mot. for Summ. J. Ex. A, A-7 at 2450434. After weekly reviews by the Jail Management Team, the team agreed on April 26, 2011 that there was no evidence to support Plaintiff's view that he was in danger and unable to be housed with others, and

Plaintiff was moved to general population housing. *Id.* Within a day of being moved, Plaintiff claimed that he was suicidal and was therefore moved to the Health Services Building. Mot. for Summ. J. Ex. A-7 at 2450435. In addition, during much of Plaintiff's incarceration, he was placed in administrative separation due to disciplinary infractions, which kept him separate from other inmates. *Id.* As a result, Plaintiff spent only one day in general population during the time period at issue in his lawsuit. *See id.* at 2450434.

On July 12, 2011, Plaintiff submitted a complaint to the Texas Commission on Jail Standards, asserting many of the same allegations in this lawsuit, that is, that TCCC officers harassed him and told other prisoners that he was a snitch, jeopardizing his safety. Mot. for Summ. J. Ex. A-2 at 2451583. Plaintiff also alleged that the trustees who served his meals insinuated that they were tampering with his food. *Id.* Sergeant Johnson, as the TCSO Grievance Sergeant, had investigated Plaintiff's various grievances and found no evidence to support his allegations. Mot. for Summ. J. Exs. A, A-2 at 2451581. The Texas Commission on Jail Standards also determined that Plaintiff's complaints were unfounded, stating that "no violation of jail standards [had] occurred." Mot. for Summ. J. Ex. A-7 at 2451704; *see also id.* at 2451703.

Shortly thereafter, Plaintiff brought this suit. His basic complaints consist of allegations of "deliberate indifference" and "wanton harassment." Orig. Compl. at 3; Response (responding to order for a more definite statement) (Document 6). Defendants have moved for summary judgment, asserting that they should be awarded judgment as a matter of law on Plaintiff's claims, and that they are entitled to qualified immunity. Other than his own affidavits, Plaintiff does not proffer

competent summary-judgment evidence for the Court's consideration.[1] As a result, his extensive allegations are presented.

Plaintiff alleges Sergeant Johnson and Sergeant Bartlett violated his civil rights by not placing him in protective custody due to his status as an ex-gang member. Document 43 at 1-31. As a result of the alleged improper classification, Plaintiff contends he was placed in danger of irreparable harm. *Id.* at 1. Plaintiff alleges that he met with Officer Garza of the gang unit and Garza recommended protective custody and advised him to refuse to be moved if that was attempted. Document 8 at 1a; *see also* Mot. for Summ. J. Ex. A-4 (audio recording of interview of Plaintiff by Officer Garza on Mar. 17, 2011); Document 68 Ex. 4 (email from J. Garza dated Aug. 25, 2003). Plaintiff alleges that Sergeant Johnson and Sergeant Bartlett deliberately disregarded Officer Garza's alleged recommendation to leave Plaintiff in administrative segregation, placing him in imminent danger and at risk for irreparable harm by forcing him out of protective custody in administrative segregation. Orig. Compl. at 4; Document 6. Plaintiff alleges that Johnson and Bartlett knew of Plaintiff's history as an ex-gang member, but as members of the Classification Committee which decides housing for inmates, they refused to leave him in administrative segregation in disregard of his safety and mental health needs. Document 8 at 1a, 2. Plaintiff alleges that despite knowing the dangers of general population to him, he was sent to general population housing and he attempted

---

[1] In addition to his own affidavits, Plaintiff includes two witness statements that are not in affidavit form as required by Federal Rule of Civil Procedure 56, nor do they follow the rules for a declaration set out by 28 U.S.C. § 1746. *See* Document 68 Exs. E-1, F-1. In addition, they are each just one sentence and address only a minor part of Plaintiff's claims. Moreover, Plaintiff's affidavits in large part present self-serving and conclusory statements and legal opinions despite the fact that evidence opposing summary judgment should "not replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188 (1990).

suicide by hanging on July 19, 2011. Document 45 at 3. Plaintiff also contends that when he refused to move to the general population, he was sent to lockdown where he suffered a psychotic episode, did not eat, and suffered physically and mentally, whereupon he was moved to the health services facility. Document 8 at 1a, 2. Johnson and Bartlett both sharply disagree with Plaintiff's version of events and the decisionmaking that occurred via sworn affidavits. Mot. for Summ. J. Ex. A (Aff. of L. Johnson); Mot. for Summ. J. Ex. B (Aff. of J. Bartlett). Johnson also asserts compliance with relevant policies and procedures and due attention to Plaintiff's history and medical files, including through the weekly meetings of the Jail Management Team, which monitors and determines appropriate housing. *See* Mot. for Summ. J. Exs. A-1– A-3, A-5–A-7; *see also* Mot. for Summ. J. Exs. A-I.

Contrary to Plaintiff's allegations, Garza's interview of Plaintiff concerning his housing request does not reflect any concern by either Garza or Plaintiff about Plaintiff's gang history or a fear of safety related to gang history or gang retaliation. Mot. for Summ. J. Ex. A-4. In fact, Garza confirmed with Plaintiff that no one was giving Plaintiff problems or giving him any "dirty looks." *Id.* In addition, Garza emphasized to Plaintiff that the source of potential trouble that existed in the past for Plaintiff (in 2003) was gone. *Id.* Garza did not recommend protective custody, but recommended administrative segregation merely based on Aguilar's personal preference to be housed alone. *Id.*

In 2004, during a prior incarceration, Plaintiff was cleared for housing in general population because he represented he was not under any threat from the Texas Syndicate gang. Mot. for Summ. J. Ex. A at 3. In incarcerations since then, he had been placed in the general population without problems. *Id.*; Mot. for Summ. J. Ex. B at 2. In his last incarceration at TCCC, he was never

5

determined to need protective custody and there were no threats to him except from himself. Mot. for Summ. J. Ex. A at 3.

Plaintiff alleges that while he suffered a psychotic episode in the suicide prevention cell, Sergeant Town harassed him by ordering an extraction team despite the fact that he was lying prostrate. Orig. Compl. at 4; Document 6. While the extraction team stripped him of his garment, Plaintiff asserts Sergeant Town (a woman) further harassed him by observing him, which was humiliating. *Id.*; Orig. Compl. at 4; Document 8 at 3; Document 43 at 2. Plaintiff also alleges Sergeant Town was callous in not intervening to stop the guards' laughing and harassing him during the event, and she covered up the guards' misconduct so they could continue their harassment. Orig. Compl. at 4; Document 6; Document 8 at 3. Town disputes Plaintiff's rendition by sworn affidavit and also asserts in detail she followed TCCC policies. Mot. for Summ. J. Ex. C (Aff. of L. Town); *see also* Mot. for Summ. J. Ex. A-6 (video of incident).

During the same extraction from the suicide prevention cell, Plaintiff alleges Officer Tate urged the extraction team to taze Plaintiff and shoot him with pepper spray, which caused Plaintiff extreme fear, particularly during his psychotic episode. Document 8 at 4. After being moved from the suicide cell to another unit, Plaintiff alleges Officer Tate continually harassed him by calling him a "snitch" and a "punk" and created a risk of irreparable harm for Plaintiff by telling other inmates Plaintiff was a snitch. *Id.*; Orig. Compl. at 4a; Document 6. Officer Tate also interfered, Plaintiff alleges, with his medical treatment by telling the doctor that he was faking his mental illness. Document 8 at 4. Plaintiff also alleges when he filed a grievance based on Officer Tate's conduct, Officer Tate harassed him by telling Sergeant Town lies, and threatening him with shakedowns and cell searches, which insinuated he would plant something in Plaintiff's cell. Orig. Compl. at 4a;

6

Document 6; Document 45 at 2. Tate states through a written affidavit that he was not present during the extraction, and disputes the other allegations as well. Mot. for Summ. J. Ex. D (Aff. of W. Tate); *see also* Mot. for Summ. J. Ex. A-6 (video of extraction).

Plaintiff alleges Officer Fuller retaliated against him for filing a grievance by telling other inmates that he had to stop doing them favors with extra food because Plaintiff was a snitch, which caused problems for Plaintiff with other inmates. Orig. Compl. at 4a; Document 6; Document 8 at 6; Document 45 at 2. By sworn affidavit, Fuller refutes these accusations. Mot. for Summ. J. Ex. F (Aff. of C. Fuller). Plaintiff also alleges Officer Walsh similarly harassed Plaintiff and put his life in danger by telling inmates he was a snitch. Document 8 at 7. Walsh disagrees with the accusations through sworn affidavit. Mot. for Summ. J. Ex. G (Aff. of C. Walsh). Likewise, according to Plaintiff, Officer Sanchez harassed and endangered Plaintiff by telling other inmates he was a snitch, particularly by telling the trustees who handled Plaintiff's food. Document 8 at 8; Document 45 at 2. Sanchez also refutes the accusations by sworn affidavit. Mot. for Summ. J. Ex. H (Aff. of R. Sanchez).

When Plaintiff was in a suicide prevention cell, Plaintiff alleges Officer Ervin harassed him by deliberately refusing him a tray of food and lied to Sergeant Foster about it. Orig. Compl. at 4a; Document 6; Document 8 at 5; Document 45 at 2. Plaintiff also alleges Officer Ervin repeatedly told other inmates Plaintiff was a snitch. Document 8 at 5; Document 45 at 2. Ervin states in a sworn affidavit that he did not deny Plaintiff a meal, but offered him a sack lunch multiple times in keeping with TCCC policies, and never told other inmates Plaintiff was a snitch. Mot. for Summ. J. Ex. E (Aff. of W. Ervin). In similar fashion, according to Plaintiff, Officer Villareal harassed him by telling inmates that Plaintiff was a snitch, including the trustees serving food, deliberately placing

7

him at risk of harm and causing trustees to contaminate his food. Orig. Compl. at 4a; Document 6; Document 8 at 9; Document 45 at 2. Villareal counters these accusations by sworn affidavit. Mot. for Summ. J. Ex. I (Aff. of R. Villareal). Plaintiff asserts that on August 3, 2011, Officer Walters denied Plaintiff a food tray inappropriately, retaliating against him for filing a grievance against Officer Erwin and causing him additional pain and suffering. Document 45 at 1. Walters also disputes these accusations by sworn affidavit. Mot. for Summ. J. Ex. K (Aff. of M. Walters).

Plaintiff further alleges that Officer Kelly harassed him by spreading rumors that Plaintiff was a snitch to purposely put him at risk of harm. Orig. Compl. at 4a; Document 6; Document 8 at 10; Document 45 at 2. Plaintiff alleges Officer Kelly also wrongfully blamed a July 18, 2011 altercation with another inmate on Plaintiff and gave him a wrongful disciplinary case as retaliation for naming him as a defendant in the lawsuit. Document 45 at 2. Kelly counters these accusations by sworn affidavit. Mot. for Summ. J. Ex. J (Aff. of M. Kelly).

Plaintiff never alleges that he suffered any physical injury as a consequence of his housing placement or the purported harassment he experienced, nor does he allege that any other inmate ever harmed him, threatened him, or attempted to harm him. *See* Orig. Compl.; Documents 8, 43. He seeks punitive damages of $140,000 and an injunction, as well as the costs of his suit. Orig. Compl. at 4; Document 8 at 11; Document 43 at 4.

## ANALYSIS

**I. ARGUMENTS**

Defendants move for summary judgment, arguing that they did not deliberately ignore risks to Plaintiff's safety or mental health, they did not retaliate against Plaintiff, Plaintiff's housing classifications were proper, his conditions-of-confinement claims are unsubstantiated, and he fails

to present competent summary-judgment evidence. Plaintiff contends qualified immunity is not available to Defendants, his documentation and statements demonstrate he was improperly classified with regard to housing and suffered from Defendants' failure to protect, and experienced harassment, retaliation, and unsanitary conditions. Lastly, he asserts that he did not have to be attacked in order to have a successful failure-to-protect claim.

## II.   SUMMARY JUDGMENT STANDARD

When a summary-judgment motion is presented, a court may render judgment if the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). The adverse party to such a motion must identify specific facts showing there is a genuine issue for trial. *See, e.g., Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995); FED. R. CIV. P. 56; *see also James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) ("The standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court."). In order to establish a genuine dispute as to material facts, the nonmoving party must "go beyond the pleadings," and by affidavits or other competent summary-judgment evidence, identify "specific facts" that show there is a genuine issue for trial. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 468 (5th Cir. 2010) (quotation and citation omitted). Conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence will not suffice. *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007).

In deciding whether to grant summary judgment, the Court views the evidence in the light most favorable to the party opposing summary judgment and indulges all reasonable inferences in favor of that party. *See, e.g., United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 994

(1962) (*per curiam*). If material facts are not in genuine dispute, a court may resolve the case as a matter of law. *See, e.g., Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994).

### III. OFFICIAL CAPACITY CLAIMS

To the extent that Plaintiff presents claims against Defendants in their official capacity, those claims must fail. A suit against a public official is in reality a suit against the governmental entity that the official represents. *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). Therefore, a suit against Defendants in their official capacity is a suit against Travis County. A political subdivision, however, cannot be held responsible for a deprivation of a constitutional right merely because it employs a tortfeasor; under § 1983, a local government unit cannot be held responsible for civil rights violations under the theory of respondeat superior. *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). In order to hold a local government unit responsible under § 1983, there must be a custom or policy that causes the plaintiff to be deprived of a constitutional right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2038 (1978). Thus, Travis County could violate an individual's rights in a way actionable under § 1983 only through the implementation of a policy by direct order or promulgation, or through informal acceptance of a customary practice by its employees. *See Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984). An official policy or custom cannot be inferred from a single incident of misconduct by a government employee. *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S. Ct. 445, 454 (1981).

Plaintiff fails to point to any official policy or any custom or practice as the cause of his alleged injuries. *See* Document 8 at 11. Therefore, Defendants should be granted summary judgment on Plaintiff's official capacity claims.

### IV. INJUNCTIVE RELIEF

Plaintiff seeks both injunctive relief and punitive damages. Plaintiff, however, is no longer detained in the Travis County Correctional Complex, of which he complains, and is now located in the Blanco County Jail. *See* Document 77 (Sept. 25, 2012) (letter from Plaintiff indicating new location). As such, his claims for injunctive relief are moot. *See, e.g., Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (holding that transfer from facility rendered prisoner's claims for injunctive relief moot).

### V. MERITS OF INDIVIDUAL CAPACITY CLAIMS

#### A. Deliberate Indifference

##### 1. Plaintiff's Safety

Asserting deliberate indifference claims, Plaintiff contends that he was improperly classified with regard to appropriate housing and forced into the general population despite dangers to his safety there as an ex-gang member. He also contends that he was labeled a snitch by various Defendants, putting him at risk for irreparable harm.[2]

Because Plaintiff was a pretrial detainee during the time in question, his constitutional rights derive from the procedural and substantive due process guarantees of the Fourteenth Amendment,

---

[2] Defendants emphasize that Plaintiff has not claimed any physical injury and assert that he is barred from any recovery by the Prison Litigation Reform Act ("PLRA"), which includes a statutory bar against recovery for compensatory damages for mental or emotional injury absent a physical injury. *See* Mot. for Summ. J. at 10; *see also* 42 U.S.C. §1997e(e). The PLRA provides in part: "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Despite the limitations imposed by § 1997e(e), however, a prisoner can, absent a showing of physical injury, pursue punitive or nominal damages based upon a violation of his constitutional rights. *See Hutchins v. McDaniels*, 512 F.3d 193, 197-98 (5th Cir. 2007). Because Plaintiff does not seek any compensatory damages, but instead seeks punitive damages, this statutory bar does not preclude his claims.

whereas the constitutional rights of convicted inmates derive from the Eighth Amendment's prohibition on cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994); *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996) (en banc). However, the standard for analyzing failure-to-protect claims is the same. *Id.* at 647-48.

To prevail on a § 1983 failure to protect claim, Plaintiff must demonstrate that "he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). The deliberate indifference standard in a failure-to-protect claim is subjective, not objective. It requires proof that the official actually knew of a substantial risk of serious harm and failed to act. *Farmer*, 511 U.S. at 832-34, 114 S. Ct. at 1976-77. "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Id.* at 844-45, 114 S. Ct. at 1983.

Plaintiff has not identified a material fact dispute to defeat summary judgment on his failure-to-protect claims. In this case, members of the Jail Management Team stated that they considered Plaintiff's safety prior to being placed in the general population. *See* Mot. for Summ. J. Exs. A, B. Further, no harm or threats of harm came to Plaintiff as a result of his housing at TCCC. Plaintiff relies on the fact that he was not housed in protective custody or administrative segregation the entire time he was incarcerated, and contends this failure amounts to a failure to adequately protect him, but the summary-judgment evidence shows that his safety was specifically considered, both by the Jail Management Team and Officer Garza. In addition, in prior incarcerations at TCCC, Plaintiff was housed in the general population without incident. Indeed, in 2004, Plaintiff had disclaimed any

12

threat to his safety due to his status as an ex-gang member and Officer Garza, on whom Plaintiff relies in making his claims, specifically recognized that the threat that once existed and that he had recognized in 2003 no longer existed in 2011.[3] *See* Mot. for Summ. J. Ex. A-4. Moreover, Plaintiff was in the general population for only one day and at all other times, was in administration segregation or health services.

Plaintiff also fails to present summary-judgment evidence in support of the second requirement for his claim, that is, he does not present evidence that Defendants actually knew of a substantial risk of serious harm and failed to act. *See Farmer*, 511 U.S. at 845, 114 S. Ct. at 1983. For an official to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *see also Horton*, 70 F.3d at 401 (same). Indeed, Plaintiff fails to show that prison officials were aware of facts that lead to the inescapable conclusion that he was exposed to substantial danger. He relies on Officer Garza's recommendation for protective custody back in 2003 as the basis of his argument but fails to address Garza's more recent opinion or any of the other evidence undermining his assertion that Defendants were aware of danger to his safety.

---

[3] Plaintiff contends he was not properly classified when he was not housed in protective custody, but he does not assert that the TCCC classification procedures are not reasonably related to TCCC's interest in maintaining jail security, *see Jones v. Diamond*, 636 F.2d 1364, 1374, 1376 (5th Cir. 1981), nor does he contend that classification policies and procedures were not followed in his case. *See* Mot. for Summ. J. Exs. A-1, Ex. A-3 at 2450346-48, 2450355-57. Evidence in the record indicates that the Jail Management Team reviewed Plaintiff's status for his safety as well as the safety and security of other inmates and the facility. Mot. for Summ. J. Exs. A, A-7, B. Moreover, an inmate does not have a protectable liberty or property interest in his custodial classification, and his disagreement with that classification is insufficient to establish a constitutional violation. *See, e.g., Neals v. Norwood,* 59 F.3d 530, 533 (5th Cir. 1995); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992).

With regard to the accusations that Defendants labeled him a snitch and created a risk of serious harm, even assuming that Defendants did so label him, Plaintiff fails to present summary-judgment evidence that Defendants were deliberately indifferent to his safety. Plaintiff was placed in administrative segregation or in health services for all but one day. And that one day of placement in the general population occurred only after a decision by the Jail Management Team that included consideration of Plaintiff's history and safety. Moreover, at no time did Plaintiff incur any injury at the hands of another, nor did he report any attempts by other prisoners to harm him.

Furthermore, to the extent Plaintiff claims deliberate indifference to his mental health needs, he does not identify summary-judgment evidence showing that Defendants deliberately ignored his mental illness. The evidence instead shows that Defendants were aware of Plaintiff's mental health history. Mot. for Summ. J. Exs. A, A-3 at 2450340, 2450352-53. No part of the record reflects that Defendants disregarded mental health considerations nor does evidence suggest that any Defendant was aware that Plaintiff faced a risk of harm because of his mental health but disregarded that potential harm by not taking measures to abate it. In fact, for example, Plaintiff admits that he was sent to observation due to his mental health condition. Document 43 at 3. Moreover, the evidence shows that Defendants took steps to prevent possible harm, such as protecting Plaintiff from harming himself when he was suicidal. Mot. for Summ. J. Exs. A-3, D.

Plaintiff fails to identify appropriate summary-judgment evidence that supports his claims of deliberate indifference to his physical safety and mental health. Accordingly, summary judgment on Plaintiff's deliberate indifference claims should be granted to Defendants.

### 2. Unsanitary Jail Conditions

Plaintiff also complains about trustees' purported contamination of his food, which appears to be a complaint about his conditions of confinement. "In general, the State's incarceration of pretrial detainees and convicted state prisoners comports with due process guarantees because of the State's recognized interests in detaining defendants for trial and in punishing those who have been adjudged guilty of a crime." *Hare*, 74 F.3d at 638. In protecting these interest, the State has the responsibility to attend to the essentials of the well-being of the detainees and prisoners. *Id.* at 638-39.

> [W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs–e.g., food, clothing, shelter, medical care, and reasonable safety–it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.

*Id.* at 639 (quoting *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 200, 109 S. Ct. 998, 1005-06 (1989) (citations omitted)). A pretrial detainee is entitled to greater rights than those afforded convicted prisoners. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1872 (1979). While convicted prisoners have only an Eighth Amendment right to be free from "cruel and unusual" punishment, a pretrial detainee has a Fourteenth Amendment Due Process right to be free from any type of punishment. *Id.*; *see also Colle v. Brazos County*, 981 F.2d 237, 244 (5th Cir. 1993) ("A pretrial detainee . . . has a Fourteenth Amendment Due Process right to be free from punishment altogether."). When a pretrial detainee complains of a "condition of confinement," the court must determine whether the condition constitutes "punishment." *Bell*, 441 U.S. at 537, 99 S. Ct. at 1873.

Punishment may be shown by evidence of "an expressed intent to punish." *Id.* at 538, 99 S. Ct. at 1873-74. In addition, punishment may be inferred if the complained-of condition fails a rational-basis test:

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal–if it is arbitrary or purposeless–a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Id.* at 539, 99 S. Ct. at 1874; *see also Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (holding pretrial detainees' due process rights are violated when "the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective").

In this case, Plaintiff does not put forward any evidence that any purportedly contaminated food produced any adverse consequences or was manifested in any recognizable way. Plaintiff also provides no evidence that the purported food contamination was imposed upon him as punishment for unproven criminal conduct.

Accordingly, summary judgment should be granted to Defendants on Plaintiff's conditions-of-confinement claims.

### B.     Retaliation

Plaintiff also brings claims of retaliation. Such a claim requires a prisoner to show: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation. *Jones*, 188 F.3d at 324-25. The Fifth Circuit has cautioned district courts to "carefully scrutinize" claims of retaliation so that prisoners do not "inappropriately insulate themselves from disciplinary actions by drawing the shield

of retaliation around themselves." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Mere conclusory allegations of retaliation will not suffice; instead, an inmate must produce direct evidence of motivation or a chronology of events from which retaliation may plausibly be inferred. *Jones*, 188 F.3d at 325. In addition, an inmate must produce more than just his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Lastly, if a prisoner is unable to point to a specific constitutional right that has been violated, the claim will fail. *Jones*, 188 F.3d at 325. In this case, Plaintiff presents only his own personal belief in support of his claims of retaliation and also fails to present either direct evidence of Defendants' motivation for retaliation or a chronology that permits an inference of retaliation. Accordingly, Defendants are entitled to summary judgment on the retaliation claims.

### V. QUALIFIED IMMUNITY

Defendants also assert that they are qualifiedly immune. The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). Further, the defense of qualified immunity protects a public official from both litigation and liability, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991). "[Q]ualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law." *Brady v. Fort Bend County*, 58 F.3d 173, 174 (5th Cir. 1995) (citation and quotation omitted).

In assessing the defense, a court determines whether the plaintiff has asserted the violation of a clearly established constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 236-37, 129 S. Ct.

808, 818-19 (2009); *Woods*, 60 F.3d at 1164. If that inquiry is answered in the affirmative, the defendant's conduct is then considered to determine if the conduct was objectively reasonable in light of the established law. *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993). To rebut the qualified-immunity defense when, as in this case, defendants have asserted qualified immunity in a summary-judgment motion, the plaintiff must "establish[] a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).[4] As explained above, Plaintiff fails to create a genuine factual dispute that Defendants' conduct violated clearly established law and constituted constitutional violations. As such, Defendants are entitled to qualified immunity on Plaintiff's claims.

## V.    MOTION TO STAY

Plaintiff has requested this case to be held in abeyance until he is released from jail, arguing that the case should be stayed while he is incarcerated. Mot. for Stay (July 25, 2012) (Document 73). Defendants oppose the request. Defs.' Resp. to Pl.'s Mot. to Stay (July 31, 2012) (Document 74). Plaintiff has not provided an adequate basis for a stay and his request should be denied.

## RECOMMENDATION

The undersigned recommends that the Court deny Plaintiff's Motion for Stay (Document 73). In addition, it is recommended that the Court grant Defendants' Motion for Summary Judgment (Document 65) and render a take nothing judgment.

---

[4] If a plaintiff does make such a showing, then the plaintiff must also identify a genuine factual dispute whether the defendants' conduct was objectively unreasonable in light of clearly established law at the time of the incident. *See, e.g., Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008). Plaintiff has not done so in this case.

**OBJECTIONS**

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall also bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 5th day of November, 2012.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE